Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org
Pro Hac Vice Admission Pending

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

|  |  |
|---|---|
| Center for Biological Diversity, | |
| Plaintiff, | Case No._____ |
| v. | |
| U.S. Fish and Wildlife Service; Martha Williams, in her official capacity as Director of the U.S. Fish and Wildlife Service; and Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | |

## **INTRODUCTION**

1.      Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to (1) issue final rules on petitions to list the cactus ferruginous pygmy owl, Peñasco least chipmunk, Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, false spike, pyramid pigtoe, Mt. Rainier white-tailed ptarmigan, and four distinct population segments ("DPS") of the foothill yellow-legged frog: the Central Coast DPS, North Feather DPS, South Sierra DPS, and the South Coast DPS; (2) failure to issue a timely 12-month finding for the tall western penstemon; and (3) failure to finalize critical habitat protection for the Pacific marten coastal DPS, in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. The agency's failure to meet these deadlines delays crucial, lifesaving protections for these imperiled species, increasing their risk of extinction.

2.      Defendants have abrogated their duty to ensure that these species are timely protected to avoid further decline and an increased risk of extinction, in violation of Section 4 of the ESA.

3.      Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated the ESA by failing to timely finalize 11 proposed rules and failing to issue one 12-month finding and a critical habitat designation for the species in this Complaint, and directing the Service to finalize its overdue rules and issue the 12-month finding and critical habitat designation by a date certain.

## **JURISDICTION**

4.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision), and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201-2202; and 5 U.S.C. § 706(2).

5.      Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated February 7, 2023

(received February 13, 2023). Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this judicial district.

## PARTIES

7.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 89,000 active members throughout the country.

8.      The Center brings this action on behalf of its organization, and its staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from these 13 species and their habitats. Plaintiff's interests in protecting and recovering these species and their habitats are directly harmed by the Service's failure to issue timely findings.

9.      For example, Center member Christina McVie resides in Arizona in cactus ferruginous pygmy owl habitat. Her residence is near Arthur Pack Park, which had the most prolific nest site recorded in Arizona. Ms. McVie is the former Vice-President and Conservation Chair of the Tucson Audubon Society, a former member of the "Cactus Ferruginous Pygmy Owl Recovery Implementation Team," and the board president of the Coalition for Sonoran Desert Protection. She is active in various national and local conservation organizations. Ms. McVie frequently conducts field visits in Pima County and adjoining counties to observe the owl's habitat conditions, including in the Avra and Altar Valleys and other areas where the cactus ferruginous pygmy owl has been detected. Ms. McVie is harmed by the Service's delay in finalizing protections for the cactus ferruginous pygmy owl.

10. Center member Grant Gourley resides in New Mexico. Mr. Gourley backpacks in the White Mountain Wilderness in Peñasco least chipmunk habitat about twice a year. He backpacked in the chipmunk's habitat in February 2023 and plans to return in fall 2023 and look for the chipmunk. His recreational and aesthetic interests are harmed by the Service's delay in protecting the Peñasco least chipmunk because the loss of this chipmunk would lessen his experience in nature.

11. Juliet Whitsett is an artist and educator residing in Texas. She uses the habitat of the Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, and false spike as inspiration in her art, for recreation, and to develop art curriculums to teach her students about the lives of these mussels. She has taught classes themed on these specific mussels. With her family, Ms. Whitsett intends to return to the mussels' habitat in 2023. They travel biannually to the Rio Grande and Edwards Plateau regions to specifically search for these mussels. Ms. Whitsett has a spiritual connection with these species. One of the works she created, entitled "Freshwater Saints," was inspired by how these species clean waterways. Ms. Whitsett's moral, ethical, professional, aesthetic, spiritual, and recreational interests in Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, and false spike are harmed by the Service's delay in protecting these mussels.

12. Center member Tierra Curry, Senior Scientist and Director of the Saving Life on Earth Campaign at the Center, regularly swims, kayaks, and snorkels in the habitat of the pyramid pigtoe, where she enjoys looking for freshwater mussels and mussel shells. She has looked for pyramid pigtoe mussels in the Green, Barren, and Tennessee Rivers in her home state of Kentucky, and in the Clinch, Cumberland, and Duck Rivers in Tennessee. She visited these habitats in 2021 and plans to return to the Green, Clinch, and Cumberland Rivers in summer 2023. Her recreational interests in pyramid pigtoe are harmed by the Service's delay.

13. Center member Ryan Shannon resides in Oregon and has visited the Mt. Rainier white-tailed ptarmigan's habitat multiple times. Mr. Shannon proposed to his

wife in the bird's habitat and visited Mt. Rainier National Park on his honeymoon in 2020 to search for the white-tailed ptarmigan. He intends to visit again in summer 2024 to complete the Wonderland Trail at Mount Rainier National Park. Mr. Shannon has a personal connection to this bird and its habitat, and his aesthetic and recreational interests are harmed by the Service's delay in finalizing protections for the Mt. Rainier white-tailed ptarmigan.

14.     Center member Jeff Miller, Senior Conservation Advocate at the Center, has professional, recreational, aesthetic, and spiritual interests in the conservation of the four DPS of the foothill yellow-legged frog at issue in this complaint. Mr. Miller helped draft the ESA listing petition for the foothill yellow-legged frog, he submitted extensive comments to the Service as part of the agency's status review, and in 2016, he helped draft the state listing petition. Mr. Miller has observed foothill yellow-legged frogs in upper Alameda Creek in Alameda County, Little Carson Creek and Lagunitas Creek in Marin County, and along the Eel River in Mendocino County. He regularly visits rivers and streams that support these frogs. He has visited foothill yellow-legged frog streams in the Central Coast DPS habitat, including Alameda Creek in Alameda County, Corral Hollow Creek in San Joaquin County, and within Pinnacles National Monument; in the North Feather DPS habitat, in the vicinity of Quincy, within the North Fork Feather River drainage; in the South Sierra DPS habitat, along the North Fork Kern River in Sequoia National Forest; and in the South Coast DPS habitat, on the Big Sur River and San Carpoforo Creek. He intends to return to these areas in the next year and will be leading a watershed tour in Alameda Creek in May 2023 and plans to look for the frogs. He has specific plans to return to Big Sur in fall 2023 and to Pinnacles National Monument in spring 2024 in both cases to observe wildlife, including foothill yellow-legged frogs. He has written a forthcoming wildlife guide that includes a chapter on the foothill yellow-legged frog.

15.     Center member Quinn Read, Oregon Policy Director at the Center, is a regular visitor to the Tualatin River National Wildlife Refuge where the tall western

penstemon resides. She takes her young son to the refuge to see the bird and plant life. Last year, Ms. Read spent her entire visit looking for the tall western penstemon and intends to return to the refuge this year during mid-summer 2023 when the flowers are in bloom. Ms. Read resides in Oregon and wrote the petition to list the penstemon and is therefore professionally harmed by the Service's failure in issuing a timely 12-month finding. She is also recreationally and aesthetically harmed.

16.     Center member Noel Soucy resides in Humboldt County. She is a consulting wildlife biologist and spatial analyst, with some of her work focusing on conservation efforts for native predators, including the Pacific marten coastal DPS. She participated in genetic field studies that documented the presence of the coastal marten in the Blue Creek watershed in Six Rivers National Forest for the first time in over 50 years. She regularly frequents the marten's habitat for photography, recreation, and inspiration. She also frequents the coastal marten's habitat for professional reasons, including observing past fire impacts on marten habitat and looking for any signs of martens, such as scat and prints. She has concrete plans to visit the marten's habitat in Blue Creek this summer.

17.     Defendants' violations of the ESA's nondiscretionary mandatory deadlines have delayed the ESA's protections for these 13 species, harming the Center's members' interests in them. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no other adequate remedy at law.

18.     Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the 13 species at issue in this suit. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

19.     Defendant MARTHA WILLIAMS is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Williams is sued in her official capacity.

20.     Defendant DEB HAALAND is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Haaland is sued in her official capacity.

## STATUTORY FRAMEWORK

**The Endangered Species Act**

21.     The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

22.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. *Id.* § 1532(16) (defining "species"). For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

23.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* §1536(a)(2).

24.     ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* §

1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

25.     The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). A "distinct population segment" of a species is also known as a "DPS." When considering whether a population segment qualifies as a DPS under the Act, Service policy requires the agency to determine whether the population is "discrete" and "significant." If the Service determines that a population segment is both discrete and significant, then the population qualifies as a DPS and meets the ESA's definition of a "species" that may be classified as threatened or endangered.

26.     A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

27.     The ESA requires the Service to determine whether any species is endangered or threatened because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

28.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is

known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

29.    If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

30.    Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

31.    If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

32.    Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule."

## FACTUAL BACKGROUND

**Cactus ferruginous pygmy owl**

33.    The cactus ferruginous pygmy owl is a small, fierce raptor found in Arizona, Texas, and northern Mexico. They are named for the saguaro cactuses they live in, their rusty-colored stripes, and their small size. These 2.5-ounce raptors prey on birds twice their size and feed lizards to their chicks.

34.    In Arizona and northern Sonora, Mexico, the species is threatened by urbanization and the planting and rapid spread of invasive buffelgrass, which spreads fire that eliminates the columnar cactuses and other desert vegetation needed by the owl. It is

also threatened by droughts driven by climate change. Cactus ferruginous pygmy owl numbers have declined to the low fifties in Arizona.

35. In Texas and Chihuahua, Mexico, the pygmy owl is threatened by agricultural development and human population growth, which fragments populations. Further south in western Mexico, including portions of Sinaloa, Nayarit, Jalisco, and Michoacan, pygmy owl habitat is threatened by urbanization and agriculture.

**Peñasco least chipmunk**

36. The Peñasco least chipmunk is a chipmunk found only in the Sacramento and White mountains of southwestern New Mexico. As the name indicates, Peñasco least chipmunks are smaller than most chipmunks. They eat wild strawberries and gooseberries. A 2020 survey found an estimate of only 44 Peñasco least chipmunks left in the wild.

37. The chipmunk is threatened by habitat loss and degradation from historic logging and livestock grazing of its forest and meadow habitat. It is also threatened by the loss and degradation of mature ponderosa pine forests due to logging, recreational development, predation, competition, inbreeding because of its low numbers, and climate change events including drought and wildfires. The chipmunk has been waiting for protection since 1982.

**Texas fatmucket**

38. Texas fatmucket is a freshwater mussel found in the upper reaches of major tributaries within the Colorado River basin in Texas. It is about 4 inches in length and has a yellow, green, and tan shell.

39. Mussel populations are indicators of the health of aquatic environments. Like the other Texas mussels in this complaint, it requires free-flowing rivers and streams that are free of contaminants. The fatmucket can't live in reservoirs and is thus threatened by dams. Other threats include sedimentation, habitat destruction, predation, and drought fueled by climate change.

**Guadalupe fatmucket**

40.     Guadalupe fatmucket is a freshwater mussel that was recently discovered to be a separate and distinct species from the Texas fatmucket. The mussel is found in just one population along 54 miles of the Guadalupe River basin in Kerr and Kendall Counties in Texas. It faces many threats, including contamination of its habitat by pollutants, predation, and climate change.

41.     Like the Texas fatmucket, the Guadalupe fatmucket requires free-flowing rivers and streams and is threatened by dams, pollution, and drought driven by climate change.

**Texas fawnsfoot**

42.     Texas fawnsfoot is a freshwater mussel found in the lower reaches of the Colorado and Brazos Rivers, and in the Trinity River. It was first described in 1859. It is a small to medium-sized mussel, about 2.4 inches long, with an oval shell.

43.     Texas fawnsfoot was historically distributed throughout the Colorado and Brazos River basins. It is extirpated from the Leon River. It faces many threats, including contamination of its habitat by pollutants, predation, and drought driven by climate change.

**Texas pimpleback**

44.     Texas pimpleback is a freshwater mussel found in the Colorado River basin in five isolated populations. It was first documented in 1855. Only the Lower San Saba and Llano River populations are known to be successfully reproducing. It is a small to medium-sized mussel, about 4 inches long, and has a yellow, brown, or black shell that occasionally has green rays or circular spots. It faces many threats, including contamination of its habitat by pollutants, predation, and drought driven by climate change.

**Guadalupe orb**

45.     Guadalupe orb is a freshwater mussel found in just two populations in the Guadalupe River basin. It was recently discovered to be a unique species, separate from

the Texas pimpleback. It occurs in the Guadalupe River basin in two isolated populations. It is a small-sized mussel with a shell length that reaches up to about 2.5 inches in length. It is similar to the Texas pimpleback, but its shell is thinner and more compressed. It faces many threats, including contamination of its habitat by pollutants, predation, and drought induced by climate change.

**False spike**

46.     False spike is a freshwater mussel that was once common in Texas. It is native to the Brazos, Colorado, and Guadalupe basins in central Texas. It was first documented in 1895 and was considered extinct until a single specimen was discovered in 2011 near Gonzales in the Guadalupe River. The species is now known in four populations: the Little River and some tributaries; the lower San Saba and Llano Rivers; and the lower Guadalupe River.

47.     The false spike is a medium-sized freshwater mussel, about 5.2 inches in length. It has a yellow-green to brown or black elongated shell, sometimes with greenish rays. It faces many threats, including contamination of its habitat by pollutants, predation, and climate change.

**Pyramid pigtoe**

48.     Pyramid pigtoe, also known as the pink pigtoe, is a freshwater mussel found in Alabama, Arkansas, Kentucky, Louisiana, Mississippi, Ohio, Oklahoma, Tennessee, and Virginia. It is reddish to chestnut brown with a smooth, thick triangular shell that can grow to almost four inches in length. The mussel has disappeared from Illinois, Indiana, Iowa, Kansas, Minnesota, Missouri, Pennsylvania, West Virginia, and Wisconsin. It has lost nearly 80% of its range. It declined because of the historical collection of its shell to make buttons on an industrial scale followed by widespread damming of rivers, which cuts off the flowing water the pigtoe needs to survive. Historically there were 151 known populations. Today there are only 35.

49.     This mussel is threatened by pollution from suburban development, agriculture, mining, and dredging, which have reduced water quality throughout its range.

The pigtoe is also threatened by a novel virus that is causing a die-off of mussels, and by the spread of zebra mussels and other invasive species.

**Mt. Rainier white-tailed ptarmigan**

50.     The Mt. Rainier white-tailed ptarmigan is the smallest bird in the grouse family.  It is one of the few animals that lives on alpine mountaintops throughout its entire life. Every part of this bird is adapted to help it thrive in a frigid climate, from its feathered, snowshoe-like talons to its seasonally changing plumage to its remarkable metabolic ability to gain body mass throughout harsh winters.

51.     The ptarmigan's range is severely limited by its sole dependence on alpine habitat, which is shrinking due to climate change. Other threats to the bird and its habitat include inadequately regulated recreational activities, such as hiking and skiing; the use of off-road vehicles; mining; and livestock grazing. Although there has already been much damage to the alpine habitats of the ptarmigan, climate change is the gravest threat to this species. Climatic warming not only promises to directly affect the white-tailed ptarmigan's breeding success and metabolic stability but will also exacerbate the ecological instabilities caused by previous habitat degradation.

**Foothill yellow-legged frog: Central Coast DPS**

52.     The foothill yellow-legged frog is a striking stream-dwelling amphibian with a distinctive lemon-yellow color under its legs.

53.     The Central Coast DPS of the foothill yellow-legged frog occurs in the San Francisco Bay through the Diablo Range and Coast Range east of Salinas Valley.  Like the other yellow-legged frogs at issue in this complaint, it is threatened by alterations of its habitat, including dams, surface-water diversions, and channel modifications. It is also threatened by nonnative species like the bullfrog, which is a competitor, predator, and disease carrier. Other threats include parasites, sedimentation, agriculture, mining, urbanization, drought, extreme flooding, wildfires, and climate change.

**Foothill yellow-legged frog: North Feather DPS**

54.     The North Feather DPS of the foothill yellow-legged frog occurs primarily in Plumas and Butte counties in California. It faces many threats, including dams, urbanization, and climate change.

**Foothill yellow-legged frog: South Sierra DPS**

55.     The South Sierra DPS of the foothill yellow-legged frog occurs in the southern Sierra Nevada Mountains, from the South Fork American River subbasin southward to the transition zone between the Sierra Nevada and the Tehachapi Mountains that border the California Central Valley. It faces many threats, including dams, urbanization, and climate change.

**Foothill yellow-legged frog: South Coast DPS**

56.     The South Coast DPS of the foothill yellow-legged frog occurs along the coastal Santa Lucia Range and the Sierra Madre Mountains in California. It faces many threats, including dams, urbanization, and climate change.

**Tall western penstemon**

57.     Tall western penstemon is a flower found in the Pacific Northwest that is part of a genus of plants commonly known as "beardtongues." It is one of the rarest vascular plants in the Pacific Northwest. The penstemon was first recognized as a distinct species in 1932. However, for nearly 75 years there were no field observations of the species, and it was presumed extinct. In 2008, the tall western penstemon was rediscovered in Oregon.

58.     It lives today in just five known populations, narrowly distributed from southwestern Washington to northwestern Oregon. The plant is endemic to the northern Willamette Valley in Oregon and the greater Vancouver area in Washington, as well as the western Columbia River Gorge. It is adapted to cove silty clay loam soils in seasonally wet lowland meadows and streambanks, restricted to floodplain habitats below 500 feet west of the Cascade Range, and occurs in both brushy meadows and open riparian forests.

59.     It is primarily threatened by urbanization. The plant's historical wet prairie habitat has been modified by grazing, hydrological alteration, and agricultural and urban development, greatly restricting its occurrence. The conversion of wild spaces to agriculture has been the largest driver of the loss of prairie habitats in the Willamette Valley. Approximately half of the Willamette Valley is in agricultural production. The tall western penstemon is also threatened by climate change and competition from non-native species.

**Pacific marten coastal DPS**

60.     The Pacific marten coastal DPS, also called the Humboldt or coastal marten, is a medium-sized carnivore in the weasel family. It occurs in old-growth forest stands in coastal Oregon and northern California in four small, fragmented populations. The sub-species is absent throughout much of its historic range. Due to the extensive logging of coastal old-growth forests, it has been eliminated from 95% of its historic range. Other threats include wildfires and loss of genetic diversity due to population separation, and a tiny overall population.

61.     The Pacific marten coastal DPS is at high risk of extinction due to the loss and fragmentation of its forest habitat from logging and fires. Logging continues in much of the marten's remaining habitat, and climate change is expected to increase the severity and frequency of fire events. Predation and disease pose additional threats to the survival of the species. As habitat is lost, the coastal marten loses crucial cover and protection, making it vulnerable to increased predation. The marten is also threatened by rodenticide poisoning from marijuana cultivation and vehicle strikes.

**Listing Petition and Response**

62.     The Center first petitioned the Service to list the cactus ferruginous pygmy owl in 1992. 62 Fed. Reg. 10732 (Mar. 10, 1997). The owl's Arizona population was listed as endangered in 1997, but following an industry lawsuit, protections were removed in 2006. 62 Fed. Reg. 10730 (Mar. 10, 1997); 71 Fed. Reg. 19452 (Apr. 14, 2006). On March 20, 2007, the Service received the Center and partner's petition to list

the cactus ferruginous pygmy-owl. The Service determined that listing was not warranted. 76 Fed. Reg. 61856 (Oct. 5, 2011).  In 2014, the Center challenged the Service's determination in a lawsuit. 86 Fed. Reg. 72550 (Dec. 22, 2021). The court agreed with the Center and ordered the Service to reconsider its determination. *Id.* The parties reached an agreement that the Service submit a 12-month finding for the owl by August 5, 2021. *Id.* This date was extended until December 16, 2021. *Id.* On December 22, 2021, the Service published a proposed rule to list the owl as a threatened species. *Id.* at 72547. The Service determined that designating critical habitat for the owl was "prudent" but not determinable. *Id.* The deadline for finalizing this rule has passed.

63.     On October 5, 2011, the Service received a petition to list the Peñasco least chipmunk. On November 21, 2012, the Service published a positive 90-day finding, and a warranted but precluded 12-month finding stating that listing was warranted due to the "present or threatened destruction, modification, or curtailment of [the chipmunk's] habitat or range and the fragmentation and isolation of small populations."  7 Fed. Reg. 69994 (Nov. 21, 2012). The chipmunk was added to the Service's candidate list and subsequently reaffirmed in the Service's annual candidate reviews until 2019. 84 Fed. Reg. 54732 (Oct. 10, 2019).

64.     On September 28, 2021, the Service published a 12-month finding proposing to list the chipmunk as a threatened species with a critical habitat designation of approximately 6,574 acres. The deadline for finalizing this rule has passed.

65.     On June 27, 2007, the Service received a petition to list the Texas fatmucket. On October 15, 2008, the Service received an additional petition to list the Texas pimpleback, Texas fawnsfoot, and false spike. On December 15, 2009, the Service published a 90-day finding that the petitions for these mussels presented "substantial scientific or commercial information indicating that the petitioned action may be warranted." 74 Fed. Reg. 66260 (Dec. 15, 2009). On October 6, 2011, the Service published a 12-month finding that the Texas fatmucket, Texas fawnsfoot, and Texas pimpleback warranted listing but were precluded by higher priority actions. 76 Fed. Reg.

62166 (Oct. 6, 2011). These species were added to the candidate list and subsequently reaffirmed in the Service's annual candidate reviews until 2019. 84 Fed. Reg. 54732 (Oct. 10, 2019).

66.     In 2018, the Service recognized the Guadalupe orb as a separate species distinct from the Texas pimpleback, and the Guadalupe fatmucket was split from the Texas fatmucket. 86 Fed. Reg. 47916 (Aug. 26, 2021). On August 26, 2021, the Service published a 12-month finding proposing to list the Guadalupe fatmucket, Texas fatmucket, Guadalupe Orb, Texas pimpleback, and false spike as threatened species. *Id.* The Service also proposed to list the Texas fawnsfoot as a threatened species. *Id.* All six mussels were proposed with critical habitat designations (a total of 1,944 river miles). The deadlines for finalizing these rules have passed.

67.     On April 20, 2010, the Service received the Center and partners' petition to list the pyramid pigtoe. On September 27, 2011, the Service published a positive 90-day finding that the petition presented "substantial scientific or commercial information indicating that the petitioned action may be warranted." 76 Fed. Reg. 59836 (Sept. 27, 2011). On April 17, 2019, the Center filed suit challenging the Service's failure to complete a 12-month finding for the pyramid pigtoe within the statutory deadline. 86 Fed. Reg. 49991 (Sept. 7, 2021). The parties reached an agreement that the Service would publish a 12-month finding by August 31, 2021. *Id.* On September 7, 2021, the Service published a proposed rule to list the pyramid pigtoe. *Id.* at 49989. The Service determined that designating critical habitat for the pigtoe was "prudent" but not determinable. *Id.* at 50009. The deadline for finalizing this rule has passed.

68.     On August 26, 2010, the Service received the Center's petition to list the Mt. Rainier white-tailed ptarmigan. On June 5, 2012, the Service published a positive 90-day finding that the petition presented "substantial scientific or commercial information indicating that the petitioned action may be warranted." 77 Fed. Reg. 33143 (June 5, 2012). On June 15, 2021, the Service published a 12-month finding proposing to list the Mt. Rainier white-tailed ptarmigan as a threatened species under the Act. The Service

specifically determined that "habitat loss and degradation resulting from climate change will affect the Mount Rainier white-tailed ptarmigan within the foreseeable future" and that "[a]vailable information indicates that changing habitat conditions associated with future climate change, such as loss of alpine vegetation and reduced snow quality and quantity … are expected to cause populations of Mount Rainier white-tailed ptarmigan to decline." *Id.* The deadline for the Service to finalize this rule has passed.

69.     On July 11, 2012, the Service received the Center and partners' petition to list the foothill yellow-legged frog. On July 1, 2015, the Service published a positive 90-day finding that the petition presented "substantial scientific or commercial information indicating that the petitioned action may be warranted." 80 Fed. Reg. 37568 (July 1, 2015). On March 16, 2016, the Center filed suit challenging the Service's failure to complete a 12-month finding for the foothill yellow-legged frog within the statutory deadline.

70.     On December 28, 2021, the Service published a 12-month finding proposing to list four distinct population segments of this frog: the South Sierra DPS and South Coast DPS as endangered and the North Feather DPS and Central Coast DPS as threatened. 86 Fed. Reg. 73914 (Dec. 28, 2021).  The Service determined that designating critical habitat for these frogs was "prudent" but not determinable. *Id.* at 73914, 73942. On February 28, 2022, the Service published an extension of the comment period for the proposed rule to list these four distinct population segments of the foothill yellow-legged frog. The deadline for finalizing this rule has passed.

71.     On December 4, 2020, the Service received the Center and partner's petition to list tall western penstemon. On October 19, 2022, the Service published a positive 90-day finding that the Center's petition to list this plant presents "substantial scientific or commercial information indicating that the petitioned actions may be warranted." 87 Fed. Reg. 63468 (Oct. 19, 2022). Because the Service found that the petition may be warranted, it was required to publish a 12-month finding one year after it received the petition. The deadline for publication of the 12-month finding has passed.

72. On September 28, 2010, the Service received the Center's petition to list the Pacific marten coastal DPS. On January 12, 2012, the Service published a positive 90-day finding that the Center's petition to list the marten presents "substantial information indicating that listing may be warranted." 77 Fed. Reg. 1900 (Jan. 12, 2012). On April 7, 2015, the Service published a not-warranted 12-month finding on the Center's 2010 petition. 80 Fed. Reg. 18742 (Apr. 7, 2015). In 2015, the Center challenged the Service's determination in a lawsuit. 83 Fed. Reg. 50575 (Oct. 9, 2018). The court agreed with the Center and ordered the Service to reconsider its determination.

73. On October 9, 2018, the Service proposed to list the Pacific marten coastal DPS as a threatened species. 83 Fed. Reg. 50574 (Oct. 9, 2018). On October 8, 2020, the Service modified the proposed rule and listed the marten. 85 Fed. Reg. 63806 (Oct. 8, 2020). Concurrent with this final rule, the Service determined that designation of critical habitat was not determinable at that time. On October 25, 2021, the Service proposed to designate approximately 1,413,305 acres of critical habitat for the coastal marten. 86 Fed. Reg. 58831 (Oct. 25, 2021). On September 30, 2022, the Service extended the comment period for the proposed rule. The deadline for finalizing the coastal marten's critical habitat designation has passed.

74. Until Defendants timely issue the proposed rules, 12-month finding, and critical habitat designation, the cactus ferruginous pygmy owl, Peñasco least chipmunk, Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, false spike, pyramid pigtoe, Mt. Rainier white-tailed ptarmigan, the four DPS of the foothill yellow-legged frog, tall western penstemon, and the Pacific marten coastal DPS will continue to lack necessary protections under the Act.

## CLAIMS FOR RELIEF

**Violation of the ESA for Failure to Publish Timely Final Listing Determinations**

75. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

76.     The ESA requires the Service to publish a final listing determination one year after it publishes a 12-month finding with a proposed listing determination. Defendants have failed to perform their nondiscretionary duty to publish a timely final listing determination, including the concurrent designation of critical habitat designation, for cactus ferruginous pygmy-owl, Peñasco least chipmunk, Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, false spike, pyramid pigtoe, Mt. Rainier white-tailed ptarmigan, and the four distinct population segments ("DPS") of the foothill yellow-legged frog: the Central Coast DPS, North Feather DPS, South Sierra DPS, and the South Coast DPS, in violation of the ESA. § 1533(b)(6)(A), (C).

**Violation of the ESA for Failure to Publish a Timely 12-Month Finding for tall western penstemon**

77.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

78.     The ESA requires the Service to publish a finding within 12 months of receiving a petition to list a species under the Act when it makes a 90-day finding that listing may be warranted. Defendants failed to perform their nondiscretionary duty to publish a timely 12-month finding for tall western penstemon, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

**Violation of the ESA for Failure to Publish a Timely Critical Habitat Designation for Pacific marten coastal DPS.**

79. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

80.     The ESA requires the Service to publish a critical habitat designation concurrently with listing or provide notice it is extending its designation deadline. If the Service determines that critical habitat is not then determinable, it may extend the one-year period by one additional year. Defendants failed to perform their nondiscretionary

duty to publish a timely final rule for Pacific marten Coastal DPS in violation of the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), § 1533(b)(6)(C)(ii).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by (1) failing to issue timely final listing determinations for cactus ferruginous pygmy owl, Peñasco least chipmunk, Texas fatmucket, Guadalupe fatmucket, Texas fawnsfoot, Texas pimpleback, Guadalupe orb, false spike, pyramid pigtoe, Mt. Rainier white-tailed ptarmigan, and the four DPS of the foothill yellow-legged frog; (2) failing to issue a timely 12-month listing determination in response to the Center's petition to list the tall western penstemon; and (3) failing to timely finalize its critical habitat designation for the Pacific marten coastal DPS;

2. Provide injunctive relief compelling Defendants to issue the final listing determinations, 12-month finding, and publish the critical habitat designation in the Federal Register by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 22nd day of June, 2023.

<div style="margin-left:40%">

*/s/ Camila Cossío*
Camila Cossio (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6727

</div>

ccossio@biologicaldiversity.org
Pro Hac Vice Admission Pending

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: (805) 750-8852
bsegee@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorneys for Plaintiff*